FILED

2014 Oct-14  PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **BETTY SHACKELFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 7:12-cv-03581-MHH** |
| | ) | |
| **PUBLIX SUPER MARKETS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff Betty Shackelford, an African-American female, was formerly employed as a cashier at Publix Super Markets, Inc.'s Northport, Alabama store. In this lawsuit, Ms. Shackelford contends that when Publix terminated her from her job, the company violated a number of federal statutes, including the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  Ms. Shackelford also asserts two state law claims against Publix.  First, she alleges that Publix violated the Alabama Age Discrimination Act ("AADA"), Ala. Code §§ 25-1-20 et seq.  Second, she complains that Publix negligently hired, trained, retained, and supervised the employees who purportedly discriminated against her.  (Doc. 1).[1]

---

[1] In her complaint, Ms. Shackelford asserted a claim against Publix under the Americans with

1

Publix asks the Court to enter summary judgment on all of Ms. Shackelford's claims and to strike the affidavits that Ms. Shackelford filed in opposition to Publix's summary judgment motion.  As explained in greater detail below, the Court denies the motion to strike in its entirety.  The Court also denies the motion for summary judgment with respect to Ms. Shackelford's ADEA, AADA, and Title VII claims.  The Court grants the motion for summary judgment with respect to Ms. Shackelford's negligent hiring, training, retention, and supervision claims.

## I. FACTUAL BACKGROUND

Publix hired Ms. Shackelford in February 2004.  Initially, she worked as a part-time front service clerk at Publix's Northport store.  She became a full-time deli clerk in September 2004, and she became a full-time cashier at the store in December 2009.  She worked as a cashier until she was terminated in November 2011.  (Doc. 35-1 ¶ 3; Doc. 35-3; Doc. 35-5; Doc. 35-11).  Ms. Shackelford was fifty-four (54) years old when Publix discharged her.  (Doc. 45-3 at 9).  Chris Cook, who was 45 years old when Ms. Shackelford was terminated, was the manager of the Northport Publix store from June 26, 2010 until September 8, 2012. (Doc. 45-3 at 5; Doc. 35-4).

---

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. She also alleged that Publix violated Ala. Code § 25-5-11.1 because the company discharged her in retaliation for a workers' compensation claim that she filed.  (Doc. 1).  Ms. Shackelford has agreed to dismiss those claims voluntarily. (Doc. 44, p. 48).  Therefore, the Court will dismiss those claims with prejudice.

**Evidence concerning management's preference for young, white employees at Publix's Northport store**

Ms. Shackelford testified that management at Publix's Northport store treated young white employees better than older, black employees. For example, younger white employees were permitted to socialize with each other while older black employees who socialized were told to return to work. (*See* Doc. 45-16 at 209).

Other Publix employees who worked at the Northport store while Mr. Cook was the store manager have supplied testimony regarding discriminatory conduct on the part of Publix management and Mr. Cook in particular. For example, Northport Publix employee Paul Clark stated in an affidavit that he overheard a conversation in which Mr. Cook and Chris Black, a team leader at the Northport Publix, agreed that the store's "front end" employees (including cashiers) needed to "mirror" its clientele. (Doc. 45-1). Mr. Black and Mr. Cook had another discussion in which Mr. Black suggested that it was problematic that most of the "front end" employees were black because most of the store's customers were young and white. (*Id.*)

Jared Randolph, who also worked at the Northport Publix while Mr. Cook was the store manager, stated in an affidavit that he heard Mr. Cook say, "Publix needs more younger workers because they are more reliable and it makes our

image look better."  (Doc. 45-2).

Jean Brasfield, who was approximately 57 years old when Publix fired Ms. Shackelford, testified that she felt that, due to her age, she was being targeted while Mr. Cook was the store manager because management frequently told her that she was too slow.  (Doc. 45-8).

Kelvin Richardson testified that Mr. Cook would assign only one black employee to stock the freezer section, a difficult task for a single employee to complete alone.  Mr. Cook would assign two white employees to complete the same task.  (Doc. 45-4).  When Mr. Richardson brought this discrepancy to Mr. Cook's attention, Mr. Cook refused to change the practice.  (*Id.*)  Mr. Richardson also testified that he frequently observed two or more white employees talk and socialize with each other with no consequences, but two or more black employees who talked and socialized with each other were immediately told to stop and to get back to work.  (*Id.*)  Similarly, Mr. Richardson testified that white employees who used the smoking area in the back of the store were free to do so without supervision, but black employees who wanted to use the smoking area had to be supervised by an employee who worked in the back of the store.  (*Id.*)  Mr. Richardson heard Mr. Cook say that he did not care if employees complained about him because "Publix had his back and would support all of his actions." (*Id*.)  Mr. Richardson testified that he observed Mr. Cook take food from the deli

and eat it without first paying for the food at the register.  (Doc. 45-4).

Michael Johnson testified that he observed Mr. Cook "talk down" to African-American employees.  He also observed "a pattern" of Mr. Cook reprimanding African-American employees and terminating African-American employees and replacing them with Caucasian employees.  (Doc. 45-6).  Another employee, Toniko Bryant, observed that Publix management wrote-up African-American employees for conduct for which white employees were not disciplined.  (Doc. 45-7).

Jacob Brian Foster testified that he observed a Caucasian Publix deli employee, Faye Ramsey, state, in reference to a customer, "I can't stand niggers like that."  (Doc. 45-5; Doc. 45-16, p. 62).  Mr. Foster confirmed hearing Ms. Ramsey make the statement when one of the store managers asked him, but to Mr. Foster's knowledge, Ms. Ramsey was not disciplined.  (Doc. 45-5).  Mr. Foster also testified that he observed Ms. Ramsey eating food from the deli area without paying for it, that Publix management observed Ms. Ramsey eating the food, and that Ms. Ramsey never was suspended or terminated for this behavior.  (Doc. 45-5).

### Evidence Concerning Ms. Shackelford's Discharge

Publix terminated Ms. Shackelford because of events that transpired on November 28, 2011.  That day, Ms. Shackelford spent most of her lunch break

arranging to get medication for another Publix employee who was sick.  (Doc. 45-16 at 152-57).  In the time that remained in her break, she went to the Publix deli to get something to eat.  (*Id.* at 157).  She ordered two pieces of rotisserie chicken and four potato wedges from deli worker Faye Ramsey.  (*Id.* at 158-59).  Ms. Ramsey placed Ms. Shackelford's food in a black partitioned box that Publix typically uses for deli dinners.  (*Id.* at 159; Doc. 45-15).[2]  Individual items typically are served in a smaller orange box.  (Doc. 45-15; Doc. 35-8).

Because of the packaging, Ms. Shackelford looked at the price sticker on the bottom of the black box to make sure that she would not be charged for a deli dinner; deli dinners are more expensive than the chicken and one side.  The deli dinner price appeared on the sticker.  (Doc. 45-16 at 160-62).  Ms. Shackelford told Kimberly Brown, the nearest deli worker, about the mistake.  (*Id.* at 162; Doc. 35-8).  Ms. Brown was frying chicken, so she asked Kiesha George, another deli worker, to leave Ms. Shackelford's order in the black box and correct the price sticker.  Ms. George complied.  (Doc. 35-8; Doc. 45-16 at 163-65).

Ms. Shackelford took her food to the customer service counter to pay for it.  (Doc. 45-16 at 166-67).  According to Ms. Shackelford, to avoid being overcharged, she told Michelle Hunter, who was working at the customer service

---

[2] Deli dinners consist of a meat, two sides, and a dinner roll.  The parties alternately refer to this meal as a "deli dinner," "chicken dinner," or "chicken meal."  For simplicity, the Court uses the term "deli dinner."

counter, that she did not get a deli dinner.  (*Id.* at 168).  Ms. Hunter reported in a statement that Ms. Shackelford said she did not get a "chicken meal" and to "just ring up the smallest ticket, the potato wedges." (Doc. 35-8).  Ms. Shackelford took the box to the break room and ate the potato wedges.  (Doc. 45-16 at 168).  She gave the chicken to Steven Hernandez, another Publix employee, because she did not have time to eat it.  (*Id.* at 168-69; Doc. 45-12).

While Ms. Shackelford was at the customer service counter, Ms. Hunter did not open the box of food to check its contents, but after Ms. Shackelford left, Ms. Hunter told her supervisor, customer service manager Charli Pierce, that she believed Ms. Shackelford had not paid for all of the food in the box.  (Doc. 35-8; Doc. 35-4 at 41-43).  According to Mr. Cook, Ms. Pierce went to the breakroom and somehow verified that there was chicken in Ms. Shackelford's box.  (Doc. 35-4 at 48).  Ms. Pierce then reported the incident to Mr. Cook.  He interviewed Ms. Hunter, the deli associates involved, and Mr. Hernandez and got written statements from them.  (Doc. 35-4 at 41-43, 50; Doc. 35-8; Doc. 45-12).  According to Mr. Cook, Ms. Hunter rang up the chicken and then voided the charge at Ms. Shackelford's request.  (Doc. 35-4 at 45-46).  Although a receipt ordinarily reflects a voided transaction, no such transaction appears on Ms. Shackelford's receipt. (*Id.*; Doc. 45-10).

Mr. Cook does not recall a specific conversation with his supervisor, district

manager Mike Shannon, but he believes he contacted Mr. Shannon and human resources representative Jon Hartman and told them that it had been "verified that Betty stole some chicken." (*Id.* at 50-51). Mr. Cook then called Ms. Shackelford into his office and asked her what she said at the customer service counter when she purchased her food. (Doc. 45-16 at 177-78). She told him that she said to Ms. Hunter that she did not purchase a deli dinner. (*Id.*) Mr. Cook asked her if she had paid for the chicken and asked to see the receipt. (Doc. 35-4 at 51-52; Doc. 45-16 at 179-80). When she produced the receipt, Ms. Shackelford realized she had not paid for the chicken. (Doc. 45-16 at 180). Ms. Shackelford told Mr. Cook she honestly thought she had paid for the chicken and offered to pay for it then. (*Id.*). Mr. Cook testified that Ms. Shackelford said, "Oh, I just made a mistake," which he took as an admission of wrongdoing. (Doc. 35-4 at 52). Shanon Comer, the deli manager, was in Mr. Cook's office during the conversation. According to Ms. Comer, Ms. Shackelford said she had not paid attention to how much her bill was because she was focused on picking up the medicine for her friend. (Doc. 45-12).

Ms. Shackelford testified that Mr. Cook told her that he believed Ms. Hunter. He terminated Ms. Shackelford on the spot. (Doc. 45-16 at 181). Ms. Comer wrote in her statement that Mr. Cook told Ms. Shackelford her story did not "jive" and that she was suspended. (Doc. 45-12). Mr. Cook testified that he suspended Ms. Shackelford pending further investigation. Then he spoke with Mr.

Shannon and Mr. Hartman again, and they all decided to terminate Ms. Shackelford. (Doc. 35-4 at 52-54). Mr. Cook decided to mail Ms. Shackelford her discharge paperwork rather than call her back into his office because he received a threatening phone call that he believed may have been related to Ms. Shackelford's termination. (*Id.* at 55). The Notice of Discharge, dated November 29, 2011, lists the reason for Ms. Shackelford's termination as "other." This notice appears to supersede a previous Notice of Discharge that stated that Ms. Shackelford was terminated for "theft." (*See* Doc. 35-11). Publix now contends that Ms. Shackelford was terminated for violating the Associate Handbook rules on theft and employee purchases. (*See* Doc. 35 at 5; Doc. 35-12).

Although Mr. Cook testified that Publix did not hire a full-time cashier to replace Ms. Shackelford, (Doc. 35-4 at 59), Publix did hire several part-time cashiers two-and-a-half to three months after the company fired Ms. Shackelford. (Doc. 45-3 at 10, 12). According to Publix's interrogatory responses, the first five new cashiers were white and were approximately 28, 20, 18, 24, and 18 years old when Publix hired them. (*Id.*) It also appears that none of the eleven cashiers that Publix hired between Ms. Shackelford's termination and Mr. Cook's departure from the Northport store on September 8, 2012 were over the age of 40 and only one was African-American. (Doc. 45-3 at 9-19).[3]

---

[3] The employee list provided by Publix of "over 140 individuals employed at the subject store

While Mr. Cook was manager of the Northport store, Publix fired only one other employee for failing to pay for food: Daniel Simpson.  Mr. Simpson, a white male, was a part-time front service clerk, who was approximately 22 years old when Publix fired him.  According to Mr. Simpson's Notice of Discharge, Publix terminated his employment after he twice took food without paying for it.  (Doc. 48-5; Doc. 45-3 at 15).

Following her termination, Ms. Shackelford filed a charge with the Equal Employment Opportunity Commission ("EEOC").  She received a "right to sue" letter from the EEOC on October 1, 2012.  (Doc. 45-22).  She timely filed the Complaint in this case on October 11, 2012.  (Doc. 1).

## II. ANALYSIS

### A.  Publix's Motion to Strike

Publix asks the Court to strike all of the affidavits that Ms. Shackelford provided in opposition to Publix's summary judgment motion.  Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, at the summary judgment stage, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  These objections function like trial objections adjusted for the pretrial

---

while the decision maker in the instant case, Christopher Cook, was the store manager," includes some employees hired *after* September 8, 2012, the date Publix asserts in the same interrogatory responses that Mr. Cook stopped working at the Northport store.  (*Cf.* Doc. 45-3 at 5 *with* Doc. 45-3 at 9-19).  The Court has used the September 8 date in determining which employees were hired while Mr. Cook was the store manager at the Northport Publix.

setting, and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note (2010 amendments).

In short, Rule 56(c)(2) enables a party to submit evidence that ultimately will be admissible at trial in an inadmissible form at the summary judgment stage. For example, under the rule, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (internal citation and quotation marks omitted). A district court has broad discretion to determine at the summary judgment stage what evidence it will consider pursuant to Rule 56(c)(2). *See Green v. City of Northport*, No. 7:11-CV-2354, 2014 WL 1338106, at *1 (N.D. Ala. March 31, 2014). In this case, Ms. Shackelford has carried her burden of persuading the Court that she will be able to present the evidence contained in the affidavits at issue in an admissible format at trial. Therefore, the Court will consider that evidence at the summary judgment stage.

## 1. Affiants Not Mentioned in Initial Disclosures

As its first line of attack on Ms. Shackelford's evidence, Publix argues that the Court should strike the affidavits of Jared Randolph, Kelvin Richardson, Jacob Brian Foster, Michael Johnson, Toniko Bryant, and E. Jean Brasfield because, in

Publix's view, Ms. Shackelford did not disclose the witnesses properly under Rules 26 and 37.  Rule 26 requires a party to provide, without awaiting a discovery request, the names of individuals likely to have discoverable information that the disclosing party may use to support its clams or defenses.  Fed. R. Civ. P. 26(a)(1)(A).  Rule 26 also requires that,

> [a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . .

Fed. R. Civ. P. 26(e)(1)(A).  The advisory committee notes to Rule 26 state that "[t]here is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition."  Fed. R. Civ. P. 26(e) advisory committee's note (1993 Amendment).

Rule 37 provides a remedy for a party harmed by an opponent's failure to make the required disclosures.  Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Fed. R. Civ. P. 37(c)(1).  A failure to disclose is "substantially justified" if "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action."  *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).  In deciding whether to exclude testimony, a court considers "(1) the importance of the testimony; (2) the reason for the . . . failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify."  *Faulk v. Volunteers of America,* 444 Fed. Appx. 316, 317 (2011) (quoting *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004)).  "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."  *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D. Ga. 2006)).

Ms. Shackelford carried her burden with respect to Michael Johnson.  On April 9, 2013, more than five months before discovery closed, in a supplemental response to Publix's Requests for Production, Ms. Shackelford provided to Publix a copy of the Johnson affidavit that Ms. Shackelford submitted to the Court in opposition to Publix's motion for summary judgment.  *See* Doc. 49-1.  Publix had time to investigate Johnson's testimony and depose him if it wished to do so.  Because Ms. Shackelford disclosed Mr. Johnson's identity and the subject of his

13

testimony well before the conclusion of discovery, Ms. Shackelford satisfied the requirements of Rule 26.

Ms. Shackelford identified witnesses Jared Randolph[4] and Jacob Brian Foster during her discovery deposition on May 30, 2013.[5]   Both are Publix employees.  Ms. Shackelford's testimony put Publix on notice that Randolph and Foster have information about discriminatory remarks made by Mr. Cooks that Ms. Shackelford may use to support her claim of race discrimination.  *See Frye v. Escambia Cnty. Bd. of Educ.*, No. CIV.A 08-00340-WS-N, 2010 WL 1904465, at *2 (S.D. Ala. May 7, 2010) (where witness's name was mentioned in deposition but not specifically identified as a witness, race discrimination plaintiff should have known that as one of his supervisors, the witness had discoverable information concerning the qualifications for the position at issue).  The drafters of Rule 26 contemplated that such a disclosure during a deposition is sufficient to satisfy a party's obligations under the Rule.  Fed. R. Civ. P. 26(e) advisory committee's note (1993 Amendment); *see also Watts v. Hospitality Ventures, LLC*,

---

[4] Although it seems that Ms. Shackelford mistakenly referred to Mr. Randolph as "Jarrett" during her depositon, the information she provided – a close approximation of Randolph's first name, the department in which he worked in the Northport Publix, and the time period during which he heard Chris Cook's statements regarding hiring young, white cashiers – was sufficient to allow Publix, Randolph's employer, to ascertain who he was.

[5] The witness and documents at issue in *Moore v. Corporate Facilities Management, LLC*, No. 2:10-CV-3354-SLB, 2012 WL 4329288 (N.D. Ala. Sept. 17, 2012), the case on which Publix relies, were not disclosed to the opposing party until *after* the close of discovery, and no explanation was given for the delay.  *Id.* at *4.  That is not the case here.

No. 2:06-CV-1149-MEF, 2008 WL 220798, at *2 (M.D. Ala. Jan. 25, 2008) ("Rule 26(e) does not require a supplemental disclosure of a witness name if the witness was identified in discovery, such as during a deposition.").

With respect to the affidavit of Kelvin Richardson, Ms. Shackelford has provided substantial justification for her delay in identifying him as a witness. Publix did not produce documents relating to its HR investigation of Richardson's termination until December 31, 2013, almost a full year after Ms. Shackelford served the discovery request to which the documents were responsive and a month after this Court granted in part Ms. Shackelford's motion to compel and ordered Publix to release parts of its HR investigative reports.  (*See* Doc. 32).  Ms. Shackelford maintains, and Publix does not really dispute, that Ms. Shackelford did not know she would use Mr. Richardson's testimony to support her claims until she reviewed the report that Publix produced.

Ms. Shackelford also has offered substantial justification for the timing of her disclosure of witnesses Jean Brasfield and Toniko Bryant, two Publix employees who have information about the attitude of management at the Northport store.  In her affidavit, Ms. Shackelford's counsel states that Publix's counsel told her in an email that "[f]or the purposes of summary judgment, I think we have to assume that Chris Cook made the statements that are reflected in your affidavits . . . ," a reference to Paul Clark's affidavit, which Ms. Shackelford

disclosed to Publix in January 2012.  (Doc. 49-2).  Ms. Shackelford's counsel took this statement to mean that Publix stipulated to a key piece of evidence that Ms. Shackelford would submit in opposition to summary judgment.  Therefore, Ms. Shackelford decided not to submit additional affidavits from other witnesses containing cumulative testimony.  Publix does not deny making this unequivocal statement but argues that Ms. Shackelford should have known to ignore the statement based on Chris Cook's subsequent deposition and other discovery developments.  The Court found nothing in Mr. Cook's deposition that would make Ms. Shackelford's continued reliance on Publix's statement unreasonable. (*See e.g.*, Doc. 35-4 at 64-65 (Mr. Cook testifying that he has no memory of a conversation with Black about who to hire)).

At the very least, the Court finds that reasonable people could differ as to the appropriateness of waiting until January 2014 to identify Mr. Richardson, Ms. Brasfield, and Ms. Bryant as witnesses.  Their testimony – particularly Mr. Richardson's – is important to Ms. Shackelford's claims.  Although Publix is somewhat prejudiced by the delay because it did not have an opportunity to depose these witnesses, its actions prompted the delay.  Publix cannot profit from its strategic choices.  Accordingly, the Court will not strike the Richardson, Brasfield, and Bryant affidavits based on the timeliness of Ms. Shackelford's disclosure of these witnesses.

### 2.  Lack of Personal Knowledge, Unsupported Conclusions, and Hearsay

Publix also contends that the Randolph, Richardson, Foster, Johnson, Brasfield, and Bryant affidavits are not based on personal knowledge, contain unsupported conclusions, and are based, at least in part, on hearsay.

Publix overstates the requirement for demonstrating personal knowledge in a summary judgment affidavit.  When an affiant's sworn statement is based on personal knowledge, a district court is "bound to accept [the affiant's] statements as true, unless the context demonstrate[s] otherwise." *Martin v. Rumsfeld*, 137 Fed. Appx. 324, 326 (11th Cir. 2005).

> Were the law otherwise, no declaration or affidavit could be considered on summary judgment unless it expressly provided the factual predicate of each and every allegation set forth therein, demonstrating the affiant's personal knowledge. The resulting proliferation of voluminous, cumbersome summary judgment affidavits would multiply litigation expenses, burden courts with burgeoning evidentiary submissions, and transform the summary judgment proceeding into a gauntlet of evidentiary mini-trials, all in derogation of the purposes of Rule 56(e), Fed.R.Civ.P.

*King v. ADT Sec. Servs.*, No. CIV. 06-0519-WS-C, 2007 WL 2713212, at *2 n.5 (S.D. Ala. Sept. 17, 2007).  Each of the affidavits in question explicitly states that it is based on personal knowledge, and nothing in the context of the affidavits demonstrates that the testimony is based on anything other than personal knowledge.

Further, the affidavits do not make unsupported conclusions.  The affidavits

contain general statements that are supported with specific examples.  For instance, Mr. Richardson states that Mr. Cook treated black and white employees differently.   Mr. Richardson then offers several examples of that differential treatment, including:

- Black employees were assigned to stock the freezer section alone, a difficult task for one employee to complete.  White employees who were assigned the same task were assigned in groups of two or more.  When Mr. Richardson, an African-American employee, requested that at least two employees be assigned to stock the freezer, Mr. Cook refused.

- White employees were allowed to socialize with each other during work hours; black employees were not.

- White employees were allowed to use the designated smoking area without supervision; black employees were supervised.

Similarly, Mr. Randolph states that he "witnessed a racist environment" and then gives specific examples, including these:  he heard another employee use a racial slur in his presence, and when he came into the store with his African-American girlfriend, Publix management followed them throughout the store.   In short, questions about the specificity of the statements in the affidavits go to the credibility of the affiant and the weight of the evidence, not the admissibility of the evidence.  *See Petty v. United Plating, Inc.*, CV-09-S-1465-NE, 2012 WL

2047532, at *1 (N.D. Ala. May 31, 2012) (whether term used in affidavit "so lacks specificity as to affect the weight and credibility of plaintiff's evidence is a matter to be determined by a trier of fact at a trial").

Finally, these affidavits do not contain inadmissible hearsay. For example, the statements made by two Publix managers to Mr. Randolph regarding Mr. Cook's intentions to "clean house" and make life difficult for certain employees, are not hearsay because the statements are admissions of a party opponent.[6] *See* Fed. R. Evid. 801(d)(2)(D) (statements offered against an opposing party and made by the party's agent or employee on a matter within the scope of that relationship are not hearsay). Further, although the statements in Mr. Johnson's affidavit concerning Rhonda Johnson and an employee who allegedly stole gift cards are vague, Mr. Johnson certified that his statements were based on personal knowledge. Therefore, Mr. Johnson's statements are sufficient at this stage of the proceedings. *See Martin*, 137 Fed. Appx. at 326. Publix is free, of course, to attack the credibility of such statements at trial. *See Petty*, 2012 WL 2047532, at *1.

In sum, the Court finds that the affidavits of Randolph, Richardson, Foster, Johnson, Bryant, and Brasfield are admissible, and the Court will consider them in

---

[6] The Court notes that because Mr. Randolph's affidavit does not say that certain employees were targeted for termination or on a "hit list" as a result of their membership in a protected class, this testimony carries little practical weight. *See* Doc. 45-2.

19

deciding the motion for summary judgment.

### 3. Affidavit of Paul Clark[7]

Publix moves to strike the affidavit of Paul Clark because (1) it is based on hearsay; (2) Mr. Clark lacks personal knowledge; and (3) the affidavit is a "sham" because it contains internal contradictions.  The Court denies the motion for a number of reasons.

First, Chris Cook's statement to Chris Black that Mr. Black was "right about [Publix] needing to mirror [its] clientele" by hiring young, white women is not hearsay because it is an admission of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(D).  Hiring and firing employees at the Northport Publix is unquestionably within the scope of Mr. Cook's duties as the store manager.  *See Miles v. M.N.C. Corp.*, 750 F.2d 867, 874-75 (11th Cir. 1985); *cf. Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565-66 (11th Cir. 1991).

Second, Publix once again overstates the requirement for demonstrating personal knowledge in a summary judgment affidavit.  *See Martin*, 137 Fed. Appx. at 326.  Mr. Clark states that the information in his affidavit states is based on personal knowledge.  Nothing in the affidavit suggests otherwise.

Moreover, the question of whether Mr. Clark could have overheard Mr. Black and Mr. Cook's conversation, given that Mr. Black and Mr. Clark were not

---

[7] Because Mr. Clark was listed as a potential witness in Ms. Shackelford's initial disclosures, the Court analyzes Publix's arguments to strike his affidavit separately.

scheduled to work together on April 22, 2011, does not go to the admissibility of the affidavit but rather to the credibility of Mr. Clark's testimony, which a trier of fact must determine. *See, e.g.*, *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 850 (11th Cir. 2000) (excluding affidavit at summary judgment stage based on credibility determination was error); *Hunt v. 21st Mortgage Corp.*, 2:12-CV-2697-WMA, 2014 WL 426275 (N.D. Ala. Feb. 4, 2014) (defendant's arguments about plausibility of affidavit testimony "raise questions of credibility, not admissibility *vel non*"); *Petty*, 2012 WL 2047532, at *1 (whether term used in affidavit "so lacks specificity as to affect the weight and credibility of plaintiff's evidence is a matter to be determined by a trier of fact at a trial").  As Ms. Shackelford points out, there are a number of possible explanations for Mr. Clark and Mr. Black being at Publix on April 22, 2011.  Publix's argument regarding Clark and Black's schedules does not establish that the affidavit is not based on personal knowledge.

Finally, Ms. Shackelford correctly notes that the sham affidavit rule does not apply in this instance because there is no prior deposition testimony with which to compare it.  As the Eleventh Circuit has recognized,

> A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction.  However, "[t]his rule is applied sparingly because of the harsh effect it may have on a party's case."  As such, courts must "find some inherent inconsistency between an affidavit and a deposition before

disregarding the affidavit." *Id.*

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) (quoting *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1316 (11th Cir. 2007)). Although Publix may advance theories at trial about why it believes Mr. Clark's affidavit contains inconsistencies, the Court finds no such inconsistencies on the face of the affidavit and declines to extend the sham affidavit rule to a situation like this in which there is no deposition testimony to which an affidavit may be compared. Thus, the Court will consider Mr. Clark's affidavit in deciding Publix's summary judgment motion.

### 4. Affidavit of Betty Shackelford

Finally, Publix argues that the Court should strike Ms. Shackelford's affidavit (1) based on the best evidence rule because the subject of the affidavit overlaps with part of her deposition testimony, and (2) under Federal Rule of Evidence 702 because she is not a proper witness to testify about Publix's deli procedures. (Doc. 47 at 18-19).

The best evidence rule, which is found in Federal Rule of Evidence 1002, states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." The Eleventh Circuit has held that "Rule 1002 requires production of an original document only when the proponent of the evidence seeks to prove the content of

22

the writing." *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994).

Here, the best evidence rule is not implicated because Ms. Shackelford's testimony

in her affidavit and her deposition testimony do not pertain to the contents of a

writing or recording. *Id.* ("The question posed to [the witness] did not seek to

elicit the content of any writing; therefore, Rule 1002 was not implicated.");

*United States v. Howard*, 953 F.2d 610, 612 (11th Cir. 1992) ("Since the proffered

testimony was offered not to prove the content of the tapes, but rather, the content

of the conversations, the best evidence rule does not apply").

Publix's argument that Ms. Shackelford needs to be an expert to testify

regarding what color box a Publix deli order should be placed in is also without

merit.  Rule 701, which governs lay opinion testimony, allows a witness to give

opinion testimony that is "(a) rationally based on the witness's perception; (b)

helpful to clearly understanding the witness's testimony or to determining a fact in

issue; and (c) not based on scientific, technical, or other specialized knowledge

within the scope of Rule 702."  The comments to the 2000 amendment to Rule 701

state:

> most courts have permitted the owner or officer of a business to testify
> to the value or projected profits of the business, without the necessity
> of qualifying the witness as an accountant, appraiser, or similar
> expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d
> Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner
> to give lay opinion testimony as to damages, as it was based on his
> knowledge and participation in the day-to-day affairs of the business).
> Such opinion testimony is admitted not because of experience,

> training or specialized knowledge within the realm of an expert, but
> because of the particularized knowledge that the witness has by virtue
> of his or her position in the business.

Fed. R. Evid. 701 advisory committee's note (2000 Amendment). The Eleventh Circuit has held that witnesses can testify under Rule 701 "based upon their particularized knowledge garnered from years of experience within the field." *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (allowing testimony of shipbuilding employees); *see also United States v. Novaton,* 271 F.3d 968, 1009 (11th Cir. 2001) (agents permitted to give lay opinion testimony about drug practices based on their experience and personal perceptions).

In this case, Ms. Shackelford's testimony regarding the color of boxes used for deli orders was within the scope of Rule 701 lay opinion testimony. Ms. Shackelford worked as a deli clerk at Publix for five years and rang up deli orders as a cashier for two more years. Indeed, Publix's divisional associate relations manager, who provided Fed. R. Civ. P. 30(b)(6) testimony on behalf of Publix, testified that the "average" cashier would be able to identify appropriate deli packaging for various types of deli orders. (*See* Doc. 45-18 at 15). Because it is based on her job experience and personal observations, Ms. Shackelford's opinion regarding the appropriate box color for a "dinner" versus a side or single item is admissible under Rule 701.

### B. Defendant's Motion for Summary Judgment

### 1.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party.  *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

### 2.  Ms. Shackelford's Age Discrimination Claims

Ms. Shackelford claims that Publix violated the Age Discrimination in Employment Act and the Alabama Age Discrimination Act when the company terminated her from her job.  The legal standards and burdens of proof are the same under the ADEA and AADEA, and those standards mirror the standards that

govern claims filed under Title VII of the Civil Rights Act of 1964. *See Santini v. Cytec Indus., Inc.*, 537 F. Supp. 2d 1230, 1239 (S.D. Ala. 2008); *Bonham v. Regions Mortgage, Inc.,* 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001).  First, a plaintiff must establish a prima facie case of age discrimination. *Young v. Gen. Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988).  "In proving an age discrimination claim, a plaintiff can establish a prima facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for circumstantial evidence." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal citation omitted).

In the context of discrimination cases, "direct evidence" is "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." *Wright v. Southland Corp.*, 187 F.3d 1287, 1298 (11th Cir. 1999).  Generally, "a statement that (1) is by the employer (i.e., by the decisionmaker), (2) reflects a discriminatory attitude, and (3) ties the discriminatory attitude to the relevant employment decision," is direct evidence. *Id.* at 1294.  At the summary judgment stage, even if the factual predicate for the direct evidence is disputed, as long as "a jury could find that the decisionmaker had made the statement, there [is] direct evidence . . . precluding summary judgment." *Bass v. Bd. of Cnty. Comm'rs,*

*Orange Cnty., Fla.*, 256 F.3d 1095, 1112 (11th Cir. 2001); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("'Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence.'") (quoting *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996)).

In *Merritt*, the Eleventh Circuit described "a long line of cases" in which it "found direct evidence where 'actions or statements of an employer reflect[] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'"  *Id.* at 1189-90 (quoting *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir.1990)).  Those cases include:  *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990) (general manager's statement that "if it was his company, he wouldn't hire any black people" constitutes direct evidence); *Sennello v. Reserve Life Ins. Co.,* 872 F.2d 393, 394, 395 (11th Cir. 1989) (statement that "we can't have women in management" constitutes direct evidence); *Miles v. M.N.C. Corp.,* 750 F.2d 867, 874–75 (11th Cir. 1985) (plant manager's statement that he wouldn't hire blacks because "[h]alf of them weren't worth a shit" constitutes direct evidence); *Bell v. Birmingham Linen Serv.,* 715 F.2d 1552, 1553, 1557 (11th Cir. 1983) (supervisor's statement that he would not put woman in washerman position because "every woman in

the plant would want to go into the washroom" constitutes direct evidence).  In *Buckley v. Hosp. Corp. of Am., Inc.*, 758 F.2d 1525 (11th Cir. 1985), an age discrimination case, the Eleventh Circuit Court of Appeals considered, among other evidence, the decisionmaker's comments about needing new blood and recruiting younger workers and the age of the employees who replaced the plaintiff.  The appellate court found that there was "substantial direct evidence from which a reasonable jury could conclude that defendants acted with discriminatory intent."  *Id.* at 1530.

In this case, Ms. Shackelford presents two pieces of direct evidence in support of her age discrimination claims:  Jared Randolph's testimony that he heard Chris Cook, the store manager who terminated Ms. Shackelford, say that "Publix needs more younger workers because they are more reliable and it makes our image look better" and Paul Clark's testimony regarding an exchange between team leader Chris Black and Chris Cook in which Mr. Cook agreed with Mr. Black's suggestion that the Northport Publix needed to hire more young, white women to "mirror [its] clientele."  These remarks constitute direct evidence of age discrimination because they were made by the decisionmaker (Mr. Cook); they reflect a discriminatory attitude (that older workers are not as reliable or appealing to customers as younger workers); and they tie the discriminatory attitude to the employment decision at issue (Mr. Cook terminated Ms. Shackelford when she

was 54 years old).  *See Wright*, 187 F.3d at 1294; *cf. Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (offhand comment related to a job other than plaintiff's was not sort of blatant remark that constituted direct evidence).

Mr. Cook's statements constitute direct evidence even though he did not specifically mention Ms. Shackelford or her termination.  *See Wright*, 187 F.3d at 1298 n.13 (direct evidence need not specifically reference challenged employment decision).  Indeed, the Eleventh Circuit has found that similar comments about hiring younger workers, especially when coupled with the types of circumstantial evidence present here, constitute direct evidence sufficient to establish a prima facie case that an employee was terminated because of her age.  *See Buckley*, *supra*.

Because Ms. Shackelford has supported her age discrimination claim by direct evidence,[8] Publix "must prove that the same employment decision would have been made absent any discriminatory intent."  *Van Voorhis v. Hillsborough*

---

[8] Because the Court finds that Ms. Shackelford has established her prima facie case of age discrimination through direct evidence, the Court does not have to evaluate Ms. Shackelford's circumstantial evidence to rule on Publix's summary judgment motion.  The Court notes that the Eleventh Circuit "has adopted a variation of the four-pronged test set out for Title VII claims in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that allows a plaintiff to establish a prima facie case under the ADEA with circumstantial evidence." *Carter*, 870 F.2d at 582.  Under this test, in the absence of direct evidence, a plaintiff must prove: "(1) that [s]he is a member of the protected group; (2) that adverse employment action was taken against h[er], e.g. discharge, demotion, or failure to hire; (3) that [s]he was replaced by a person outside the protected group; and (4) that [s]he was qualified for the position for which he was rejected." *Id.*  Ms. Shackelford has presented some circumstantial evidence of age discrimination.

*Cnty. Bd. of Cnty. Comm'rs.*, 512 F.3d 1296, 1300 (11th Cir. 2008).   Production of a legitimate, nondiscriminatory reason for a disputed employment action is not sufficient to meet this burden.   *Alton Packaging Corp.*, 901 F.2d at 924-25. Rather,

> [a]t the summary judgment stage, the employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude; in other words, there must be no genuine issue of fact but that the employer would have made the same employment decision even absent the discriminatory motive.

*Burns*, 908 F.2d at 1518.

Publix cannot make such a showing here.   Publix's contention that Ms. Shackelford violated the Publix Associate Handbook policies on theft and employee purchases would be sufficient to demonstrate a legitimate, nondiscriminatory reason for her termination under the *McDonnell Douglas* framework if her age discrimination claim rested only on circumstantial evidence, but the argument does not establish by a preponderance of the evidence that Ms. Shackelford would have been fired even absent Publix's discriminatory intent. Ms. Shackelford has presented a question of fact about whether Publix management uniformly applied the company's employee theft and purchase policies to Publix employees at the Northport store who ate deli food without paying for it.   (*See* Doc. 45-4; Doc. 45-5; Doc. 48-5).   This is sufficient to raise a question of fact regarding whether Ms. Shackelford would have been terminated

even absent the discriminatory motive. Additionally, "a reasonable juror could accept that [Mr. Cook] made the discriminatory sounding remarks and that the remarks are sufficient evidence of a discriminatory motive which was the 'but for' cause of [Ms. Shackelford's] dismissal." *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010) (vacating summary judgment and explaining that the plaintiff's evidence of discriminatory remarks "should be taken at face value" and to conclude otherwise "would be to deny Plaintiff the benefit of resolving all reasonable inferences in her favor as the nonmoving party."). Accordingly, the Court denies Publix's motion with respect to Ms. Shackelford's ADEA and AADEA claims.[9]

### 3. Ms. Shackelford's Race Discrimination Claim

Ms. Shackelford also claims that she was terminated from her job because she is African-American. Ms. Shackelford's race discrimination claim under Title VII of the Civil Rights Act of 1964 is analyzed under the same framework as her age discrimination claims. In opposition to Publix's motion for summary judgment, Ms. Shackelford has offered both direct and circumstantial evidence of race discrimination.

---

[9] Given that summary judgment is not appropriate on Ms. Shackelford's ADEA claim, the question of whether a violation of the ADEA was a willful violation warranting liquidated damages is a question for the jury. *See Lindsey v. Am. Cast Iron Pipe Co.*, 810 F.2d 1094, 1097 (11th Cir. 1987).

Ms. Shackelford's direct evidence of race discrimination is Mr. Clark's testimony regarding the exchange between Mr. Black and Mr. Cook in which Mr. Cook agreed with Mr. Black's statement that the Northport Publix needed to hire cashiers and other front end employees who would "mirror [its] clientele" of young white women.  This discussion between Mr. Cook, the decisionmaker, and another member of the store's management team reflects a discriminatory attitude (that African-American cashiers are not as appealing to customers as white ones), and ties the discriminatory attitude to the employment decision at issue (Mr. Cook's decision to hire more white cashiers and terminate the African-American cashiers like Ms. Shackelford).  *See Wright*, 187 F.3d at 1294.  It does not matter that Mr. Cook did not specifically mention Ms. Shackelford or her termination.  *See Wright*, 187 F.3d at 1298 n.13 (direct evidence need not specifically reference challenged employment decision).  The discussion is similar to remarks that the Eleventh Circuit has recognized as direct evidence of discrimination.  *See, e.g.*, *Caban–Wheeler,* 904 F.2d at 1555; *Alton Packaging Corp.,* 901 F.2d at 923; *Sennello,* 872 F.2d at 395; discussion at pp. 26-29 supra.

Therefore, Ms. Shackelford has presented "[direct] evidence from which a reasonable trier of fact could find, more probably than not, a causal link between" her termination and her race.  *See Wright*, 187 F.3d at 1298.  As with Ms. Shackelford's age discrimination claims, questions of fact prevent the Court from

finding as a matter of law that Publix would have terminated Ms. Shackelford even absent a racially discriminatory motive. (*See* Doc. 45-4; Doc. 45-5; Doc. 48-5).

The Court would reach the same conclusion even if Ms. Shackelford's race discrimination claim rested only on circumstantial evidence. Ms. Shackelford's circumstantial evidence includes Publix's interrogatory responses which show that the first five cashiers hired after Ms. Shackelford's termination were all white, and of the 12 part-time cashiers who were hired between Ms. Shackelford's termination and Mr. Cook's leaving the Northport Publix, 11 were white and only one was African-American. (*See* Doc. 45-3 at 9-19). In addition, the list of front-end employees provided by Publix reveals that before Mr. Cook began managing the Northport store, 33 percent of the front-end employees were African-American. During Mr. Cook's tenure, the percentage of front-end African-American employees hired dropped to 14.8 percent. (*See id*). Ms. Shackelford's circumstantial evidence also highlights multiple examples of disparate treatment between white and black employees, particularly with respect to oversight and discipline. *See* pp. 4-5, *supra*.

This circumstantial evidence enables Ms. Shackelford to survive summary judgment under the *McDonnell Douglas* framework. Ms. Shackelford has established a prima facie case because (1) she is African-American; (2) she was

qualified for the cashier position (*see* Doc. 35-7); (3) she was terminated; and (4) she was replaced by white cashiers.[10]   *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Because Ms. Shackelford has established a prima facie case, the *McDonnell Douglas* framework shifts the burden to Publix to articulate a legitimate, nondiscriminatory reason for her termination.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  This burden is "exceedingly light."  Publix need only proffer a legitimate reason for the employment action.  Publix does not have to persuade the Court that the reason that it identifies actually motivated the employment action.  *See id.*; *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir. 2005).  Publix has met its burden in this case by articulating a race-neutral justification for Ms. Shackelford's termination: her violation of the Publix Associate Handbook theft and purchase policies.

---

[10] As noted above, the Court is not persuaded by Publix's argument that Ms. Shackelford was not replaced because the Northport store hired only part-time cashiers after her termination. When determining whether a plaintiff has been replaced for purposes of establishing a prima facie case of discrimination, "[j]ob labels, while instructive, are not determinative; it is job content that matters."  *Israel v. Sonic-Montgomery FLM, Inc.*, 231 F. Supp. 2d 1156, 1161 (M.D. Ala. 2002).  Within the two- to three-month period after Publix fired Ms. Shackelford, the part-time cashiers who Publix hired had the same job responsibilities as Ms. Shackelford, and the first five such cashiers who Publix hired after Ms. Shackelford's termination were white.  Therefore, Publix replaced Ms. Shackelford with cashiers outside of her protected class. *See Tolbert*, 2007 WL 445454 at *4; *Cyprian*, 799 F. Supp. 2d at 1280.

Consequently, the burden shifts back to Ms. Shackelford.  She "must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771.  She may meet this burden either "directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Addison v. Ingles Markets, Inc.*, 515 Fed. Appx. 840, 843 (11th Cir. 2013) (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265-66 (11th Cir. 2010)).  At this stage of the proceedings, the Court's "sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision;" the Court is "not in the business of adjudging whether employment decisions are prudent or fair." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).  The Court must avoid weighing conflicting evidence or making credibility determinations and must instead determine "whether a jury could reasonably infer discrimination if the facts presented [by Ms. Shackelford] remain unrebutted." *Id.* (internal quotation and citation omitted).  The Court must draw all justifiable inferences in Ms. Shackelford's favor. *Id.*

As discussed, Ms. Shackelford has produced ample evidence to permit a reasonable fact-finder to determine that Publix's reason for terminating her was a pretext for race discrimination. *See* pp. 32-33, *supra*. For example, Ms. Shackelford presented evidence that in his hiring practices, Mr. Cook was attempting to "mirror" the Northport store's young, white clientele. The number of African-American employees who worked in "front-end" jobs before and after Mr. Cook's tenure in the Northport store illustrates that Mr. Cook fulfilled his goal. *See* p. 33, *supra.* In addition, Ms. Shackelford has presented evidence that indicates that Publix treated employees who failed to pay for food differently depending on the employee's race. Ms. Shackelford has provided testimony that Publix management observed Faye Ramsey, a white deli worker, eating food from the deli without paying for it, and management did not discipline her. (*See* Doc. 45-5). Publix terminated Ms. Shackelford because she did not pay for two pieces of chicken from the deli. Publix's records suggest that the only other employee discharged for not paying for food during Mr. Cook's tenure, part-time front service clerk Daniel Simpson, a white male, was discharged after he took food without paying for it on two occasions. (*See* Doc. 48-5). Most significantly, Ms. Shackelford introduced testimony that Mr. Cook himself had eaten food from the deli without paying for it, which, by itself, is evidence that would allow a jury to reasonably disbelieve the proffered reason for Ms. Shackelford's termination. *See*

*Ross*, 146 F.3d at 1291 (finding evidence that supervisor engaged in the same behavior for which he fired Ms. Shackelford "especially compelling" and sufficient to show pretext in race discrimination case); *see also Damon*, 196 F.3d at 1363 ("the 'work rule' defense is arguably pretextual when a plaintiff submits evidence that . . . other employees outside the protected class, who engaged in similar acts, were not similarly treated") (internal citation omitted).

In her briefing, Ms. Shackelford makes much of the details of Mr. Cook's investigation into the incident leading to her termination and appears to question whether Mr. Cook made the correct decision based on the evidence before him. Publix correctly notes, however, that an employee may not establish pretext by "simply quarreling with the wisdom" of the decision to terminate her. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000); *see also Damon*, 196 F.3d at 1362. Despite this, "an employer's deviation from its own standard [termination] procedures may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (holding that failure to follow termination procedure raised at least an issue of fact as to whether decision was discriminatory). In this case, there is conflicting evidence about whether Mr. Cook fired Ms. Shackelford on the spot, as she testified, or whether she was suspended, as Cook testified. (*Cf.* Doc. 45-16 at 181 *with* Doc. 45-17 at 52). Firing Ms. Shackelford immediately might constitute a deviation from Publix's

normal policy of suspending an employee pending a complete investigation before a termination decision is made.  (*See* Doc. 45-17 at 51) (Cook testifying that typical Publix procedure is to suspend an employee pending a complete investigation). Viewing the evidence in the light most favorable to Ms. Shackelford, as the Court must, this is further evidence of pretext.

In short, there is more than enough evidence to permit a reasonable trier of fact to conclude that Ms. Shackelford's violation of the Associate Handbook policies on theft and employee purchases was not the true reason that Publix fired her.   There is evidence from which a fact-finder could conclude that discrimination motivated Publix's employment action.   Therefore, the Court denies Publix's motion for summary judgment on Ms. Shackelford's Title VII claim.

### 4. Plaintiff's Negligent Hiring, Training, Retention, and Supervision Claim

Although Ms. Shackelford did not address her negligent hiring, training, retention, and supervision claim in her opposition to Publix's summary judgment motion, the Court must decide the merits of the motion as to this claim.  *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion").   In her complaint, Ms. Shackelford

alleges that Publix negligently hired, trained, retained, and supervised Chris Black, Chris Cook, and "other employees" and that she suffered damages as a direct and proximate result of the incompetence of those Publix employees.  (Doc. 1, ¶¶ 51-55).  Under Alabama law, a party alleging negligent hiring, training, retention, and supervision must prove the underlying wrongful conduct of the employees.  *See Shuler v. Ingram & Associates*, 441 Fed. Appx. 712, 720 (11th Cir. 2011).  That underlying, wrongful conduct must be based on a common law, Alabama tort. *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002).

Federal causes of action under Title VII and the ADEA as well as the Alabama statutory cause of action for age discrimination are not Alabama common law.  Consequently, those claims cannot support a claim of negligent hiring, training, retention, and supervision.  *See, e.g.*, *Ellis v. Advanced Tech., Servs., Inc.*, 3:10-CV-555-WHA, 2010 WL 3526169, at *2 (M.D. Ala. Sept. 3, 2010) (negligent supervision cannot be based on federal cause of action such as Title VII); *Rabb v. Georgia Pac., LLC*, CA 09-0420-C, 2010 WL 2985575, at *16 (S.D. Ala. July 26, 2010) (claim cannot be based on conduct that is employment discrimination but does not support a common law tort).  Because Ms. Shackelford has not alleged an underlying tort that can support a claim for

negligent hiring, training, retention, and supervision, there is no genuine issue of material fact, and Publix is entitled to judgment as a matter of law on this claim.

## CONCLUSION

Publix's motion for summary judgment is DENIED with respect to the Ms. Shackelford's ADEA, AADA, and Title VII race discrimination claims and is GRANTED with respect to Ms. Shackelford's ADA, retaliation, and negligent hiring and supervision claims.  The Court DISMISSES WITH PREJUDICE Ms. Shackelford's ADA, retaliation, and negligent hiring and supervision claims.  Ms. Shackelford's ADEA, AADA, and Title VII race discrimination claims will proceed to trial.  The Court will provide the parties with additional instructions in a forthcoming pretrial order.

**DONE** and **ORDERED** this October 14, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE